KLEIMENHAGEN, Administrator, Respondent, vs. McCONICK and wife, Appellants.

*November 14—December 12, 1905.*

**Deeds: Execution induced by fraud: Evidence: Appeal: Finding sustained.**

A finding of the trial court to the effect that plaintiff, an aged woman, who had conveyed her land to her son (reserving to herself for life the control and use of it) and made with him a contract by which he agreed to pay incumbrances and other charges and, after retaining a certain sum for "services" theretofore rendered, to divide with his sister the balance of the stipulated value of the land, was fraudulently induced to sign the deed and contract under the belief that she was simply executing her will—is *held* not to be against a clear preponderance of the evidence although plaintiff's testimony was absolutely contradicted by the son and by his lawyer who drew the papers.

APPEAL from a judgment of the circuit court for Adams county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action brought by Caroline E. McConick, in her lifetime, to set aside a deed of 160 acres of land, in form executed by her to her son, the defendant *Dwight F. McConick,* on the ground that she was fraudulently induced to sign the same supposing it to be a will. The case was tried by the court, and findings and judgment rendered setting aside the deed, and the defendants appeal. Since the appeal was taken Caroline E. McConick has died, and the present plaintiff has been substituted in her place. The leading facts shown by the evidence are well stated in the opinion of the circuit judge, as follows:

"On the 5th day of June, 1902, the plaintiff was a widow seventy-three years old, owning and residing upon a farm of 160 acres described in the complaint, in the town of New Haven, Adams county. She was in a very feeble condition of health, was suffering, and so had been for a considerable time prior thereto, from rheumatism, kidney trouble, heart trouble, and other ailments. She lived alone, did her own housework so far as it was done, with occasional assistance from her neighbors. Her farm was worked by a tenant, she receiving an annual rental therefor of something over $100 besides the use of the garden, and the benefit, such as there was, of an orchard on the farm. The farm was incumbered by two mortgages aggregating something like $1,840, and there was other alleged outstanding indebtedness, not including claims made by the defendant, sufficient to make the total, secured and unsecured, $2,105. The plaintiff had two children, to wit, the defendant, a man aged fifty years or more, having a wife and two children, and a married sister (Mrs. Orilla Snyder), a lady of middle age, who also had two children. Both son and daughter resided a considerable distance from the plaintiff— the former at Friendship and the latter at Kilbourn, Wisconsin. The plaintiff believed that she would live but a short time. She did not want longer to live alone; was about to visit, or temporarily reside with, her said daughter; desired to charge her estate with some small bequests in favor of her said four grandchildren, and to leave to her said son and daughter in equal proportions such of her estate as should remain after payment of debts and other proper charges against

the same, including said proposed bequests to her grandchildren. She had for some time contemplated making a will. Having much confidence in her son, the defendant, she had at different times made known to,him her wishes in the respects mentioned, and advised with him as to the ways or methods by means of which they could best be given effect. Some two weeks before said June 5th she discussed her said plans with the defendant, and then concluded that she would carry them out by means of a will, which she seemed to understand would be a very simple proceeding. She then proposed that the will be drawn without delay, and that neighbors be called in to witness its execution. She was persuaded by defendant to delay the matter for a few days, or until he could secure the services of his lawyer, a competent and reliable one, in whom he had great confidence. Some two weeks thereafter elapsed during which the plaintiff dictated at least one letter to defendant urging him to come speedily and to have the contemplated business closed.

"On the evening of June 4th the defendant and his lawyer, Mr. Corning, of Plainfield, Waushara county, arrived at plaintiff's home. On the following morning Mr. Corning prepared for execution, and the parties respectively signed, the deed and contract set forth in the answer. The deed purports to convey to the defendant the plaintiff's farm, she reserving to herself for life the control and use thereof. The contract stipulates that the farm is (then was) worth $4,000. By it defendant, in consideration of the said deed to him, assumes and agrees to pay, as therein set forth, enumerated incumbrances upon the farm and other specified debts and charges, including $100 to each of plaintiff's said four grandchildren, amounting in all to $2,505, and of $1,495 of proceeds of purchase money still remaining defendant is to pay as follows: (1) Expenses of last sickness and burial of plaintiff. (2) Retain to his (defendant's) own use, 'for services heretofore rendered,' $500. (3) Balance to be equally divided between defendant and Mrs. Snyder. Deducting nothing for estimated expenses of plaintiff's last sickness and burial, the balance to be divided between defendant and his said sister will be $995.

"As appears from the face of the writing signed by the parties, such was the result of their action on the 5th day of June, 1902. The plaintiff solemnly asserts and insists that she sup-

posed, at the time, she was executing a will containing provisions substantially as before mentioned; that she at no time intended or consented to part with the title to or control of her property; that her chief anxiety to make a will was because of her desire to 'remember' her grandchildren, and that she was led to sign the said deed and contract supposing, at the time, that she was executing a will, by reason of defendant's fraudulent misstatements and misrepresentations to the effect that the papers so executed by her were in fact her will. In this contention the plaintiff is flatly contradicted by both defendant and his attorney."

For the appellants there was a brief by *Buchanan Johnson* and *Kronshage, McGovern & Corrigan,* and oral argument by *W. D. Corrigan.*

For the respondent there was a brief by *N. E. Van Dyke* and *Grotophorst, Evans & Thomas,* and oral argument by *E. O. Evans.*

WINSLOW, J. As will be readily observed, the questions presented are purely questions of fact. The circuit judge found, in accordance with the testimony of the deceased woman and in direct opposition to the testimony of the defendant *Dwight McConick* and the lawyer who drew the papers, that the intestate was fraudulently induced to sign the deed and contract under the belief that she was simply executing her will, and the inquiry is whether these findings are so clearly against the evidence that this court should set them aside. The transaction was recent. There was no possibility of reconciling the conflicting accounts of the transaction on the ground of honest mistake or failure of recollection. The stories on each side were explicitly and positively told, and were absolutely contradictory of each other. Two witnesses upon one side stood opposed to one witness upon the other side, who was also the party in interest, and yet the trial court was convinced of the veracity of the one witness and rejected the evidence of the two witnesses as unworthy of belief. Neither of the witnesses was directly impeached, nor was the story of either inherently

incredible, and hence it seems clear that in order to arrive at the result which he reached the trial judge must have deemed that there was something in the evidence or in the conduct of the two witnesses which threw discredit upon their testimony and justified its rejection practically *in toto*. This conclusion is made certain upon examination of the carefully prepared and comprehensive opinion written by the circuit judge and returned with the record, in which, after stating the leading facts and claims as quoted in the statement of facts above set forth, he reviews the evidence upon the controverted points and draws his conclusions. Without inserting the opinion in detail, it may be said that there seem to have been seven general grounds which in the opinion of the circuit judge justified the absolute rejection of the defendant's version of the transaction, which grounds may be summarized as follows:

*First.* It appears without dispute that the intestate had for months been thinking of making a will, and had talked frequently with her son about it, and that if her mind were ever changed upon the subject it was suddenly changed on the very morning after the execution of the papers as the result of a very few moments' conversation with the defendant's lawyer; and that she gained absolutely nothing by the change, but that defendant gained much.

*Second.* It appears that the intestate desired to have the will drawn by a neighbor, or by the county judge, or by a lawyer at Kilbourn, but was dissuaded by the defendant, who without any apparent cause volunteered to procure Mr. Corning, who had been his own lawyer in other transactions and who would be obliged to travel a distance of forty miles to draw a very simple paper, and who was in fact paid by the defendant for his services.

*Third.* No witness was called in from the neighborhood, but Mr. Morse, a justice of the peace residing two or three miles away, was sent for to take the acknowledgments, and he testifies without substantial dispute that he was called into

the room after the papers were prepared, that he did not know the contents of the papers, and that Mr. Corning said that it was not necessary that he should know the contents, whereupon he signed as a witness and attached his official signature to the acknowledgments; Mr. Corning having asked the intestate whether this was her free act and deed.

*Fourth.* The defendant had no just claim for $500 "for services heretofore rendered" or for any sum approaching that amount; he had rendered some occasional services for his father (who had died some years previously leaving the farm to his mother), and had also visited and advised with his mother, but even under his own testimony the sum total of all these alleged services does not approach $500 in amount, and, as the circuit judge rightly says, "it is a charge no dutiful son would be likely to make against his decrepit and widowed mother."

*Fifth.* No substantial reason appears why the defendant should receive any larger sum from his mother's estate than his sister, Mrs. Snyder; but it appears that whether the deed be sustained or not he will be enabled to absorb a very large proportion of the entire estate. This appears from the following facts: The father died indebted to the defendant's aunt in the east upon notes of hand aggregating about $1,450. This claim was not proven against the estate of the father, but the defendant, acting as agent for his aunt, induced his mother to mortgage the farm to his aunt to secure the claim of $1,450, and the aunt soon thereafter assigned the mortgage as a gift to the defendant, who now holds it, and it is a part of the incumbrance of $2,150 referred to in the contract. The circuit judge says in his opinion, in reference to these transactions, that the "defendant's attitude towards his mother and her estate and towards his sister, as shown by his own testimony, has not been such as to evidence entire unselfishness on his part, nor to strengthen his present contention that he sought no unjust advantage in the transactions of June 5th." This

is a very mild characterization of acts which seem in our judgment to indicate quite clearly a very grasping and covetous course of conduct entirely consistent with a final stroke of just the nature found by the court.

*Sixth.* It appears quite certain that the intestate had no idea that she had deeded away her farm. After the execution of the papers she went to live with her daughter, and in September received an offer of $5,000 for the farm, and resolved to accept it unless the defendant would purchase it at the same price. She wrote her son to this effect, and he delayed any answer for ten days or more, on the ground, as he says, that he thought the letter was a "ruse or a blind." Why he should think his aged mother was guilty of a "ruse or blind" if his own conduct had been blameless is not apparent; if he himself had been guilty of sharp practice such a suspicion would be quite natural.

*Seventh.* Mr. Corning brought with him a blank deed for execution, at the request of the defendant, although the intestate had at all times prior to that morning expressed her intention to execute a will.

There are other minor indications in the evidence of a disposition on the part of the defendant to absorb the greater part of the estate, and upon careful consideration of the whole case we cannot say that the circuit judge, who had the advantage of seeing the witnesses and hearing them testify, was wrong in his conclusions.

*By the Court.*—Judgment affirmed.